IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

GRETA BASSLER,

                         Plaintiff,                              OPINION AND ORDER

v.

                                                                  21-cv-814-wmc

MARTIN O'MALLEY,
Commissioner of Social Security,

                         Defendant.

Plaintiff Greta Bassler seeks judicial review of a final decision of defendant Kilolo Kijakazi, Acting Commissioner of the Social Security Administration, finding her not disabled under the meaning of the Social Security Act. Specifically, Bassler alleges the Administrative Law Judge William Shenkenberg ("ALJ"), who decided her claim of disability, committed two discrete errors: (1) not properly evaluating the opinions of Dr. Sonea Mahboob and Ms. Kate Onsgard; and (2) not reflecting Bassler's moderate limitations with concentrating, persisting or maintaining pace ("CPP") in her residual functional capacity ("RFC"). Because the ALJ's findings and conclusions were both reasonably explained and supported by the record, however, this court must affirm the Commissioner's decision.

BACKGROUND

Ms. Bassler was born on January 15, 1967. She filed for disability on July 30, 2019, claiming disability since August 24, 2018, at 51 years of age. (Dkt. #13, at 4.) Before her alleged onset date, Bassler participated in a July 2016 consultative psychological evaluation

with Steve Krawiec, Ph.D. (Tr. 890–94.)[1]  Since her alleged onset of disability in this case, Sonea Mahboob, M.D., and Kate Onsgard were two of plaintiff's mental health providers.

In November 2020, Dr. Mahboob filled out a mental medical opinion form in which she opined that plaintiff had a host of significant limitations.  (*Id.* 4176–80.)  Among other things, Mahboob opined that plaintiff would be unable to meet competitive standards with respect to many mental abilities and aptitudes listed on the form, as well as absent for two days of work per month.  (*Id.* 4178–80.)  In January 2021, Ms. Onsgard filled out a similar form, opining that plaintiff would be absent for four days a month.  (*Id.* 4442.)  Although Onsgard also opined that plaintiff had "very good" functioning with respect to many mental abilities and aptitudes, she further found that Bassler was "seriously limited" with respect to completing a normal workday and workweek without interruptions from psychologically based symptoms.  (*Id.* 4440.)

The State-agency reviewing consultants -- Deborah Pape, Ph.D., and Jason Kocina, Psy.D. -- provided contrary opinions in this case.  Dr. Pape's opinion was provided on December 3, 2019.  (*Id.* 168–71.)  Pape found Bassler would be "moderately limited" in her ability to complete a normal workday and workweek, with some difficulty maintaining concentration due to functional limitations, and she would have ongoing difficulty interacting appropriately with others due to her posttraumatic stress disorder (PTSD) and bipolar disorders.  (*Id.* 168–69).  Dr. Kocina's opinion was provided on June 24, 2020.  (*Id.* 209–12.)  Kocina found Bassler would have difficulty maintaining concentration for more

---

[1] Unless otherwise indicated, citation to "Tr." refers to the designated pages from the social security hearing transcript found at dkt. #10.

2

than two hours. (*Id.*) Indeed, both Drs. Pape and Kocina agreed that Bassler had sustained concentration and persistence limitations. (*Id.* 168; *id.* 209.)

A hearing before the ALJ was held on February 9, 2021, who found that Ms. Bassler had the following, severe impairments: trigeminal neuralgia, left humerus fracture, depression, bipolar disorder, PTSD, and alcohol use disorder. (*Id.* 38.) However, the ALJ also found Bassler did not exhibit difficulty with attention, concentration, or memory, and recent psychiatric records revealed similar findings. In particular, the ALJ relief upon findings of her "grossly intact memory, average fund of knowledge, grossly intact attention/concentration, calm and cooperative behavior, good eye contact, normal speech, a full range of affect, good hygiene, good insight, good judgment, and good impulse control." (*Id.* 43.)

Thus, the ALJ found that Bassler had the residual functional capacity to perform "light work" with the following limitations:

- can occasionally climb ladders, ropes or scaffolds;
- can frequently reach in all directions, including overhead, with the left non-dominant arm;
- should avoid concentrated exposure to hazards such as unprotected heights and moving machinery;
- can understand, remember and carry out simple instructions and perform simple routine tasks in a position with only occasional changes;
- can maintain concentration, persistence and pace for simple tasks in two-hour increments;
- and can have occasional interaction with the public, coworkers, and supervisors.

(*Id.* 41.)

OPINION

The question before this court on review is whether the ALJ has sufficiently articulated his findings for Bassler's RFC, supported by sufficient evidence to uphold the agency's factual determinations. *Biestek v. Berryhill*, --- U.S. ----, ----, 139 S. Ct. 1148, 1154 (2019). This standard requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The ALJ must also identify the relevant evidence and build a "logical bridge" between that evidence and the ultimate factual determination. *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014). For the reasons discussed below, this court finds that the ALJ's decision meets these requirements.

I.   **ALJ's Weighing the Opinions of Dr. Mahboob and Kate Onsgard**

Plaintiff argues that the ALJ did not properly evaluate the opinions of Dr. Mahboob and Ms. Onsgard. (Dkt. #13, at 6–22; dkt. #18, at 5–15.) To support this, plaintiff first asserts that the ALJ improperly pointed to evidence "outside the relevant period." (Dkt. #13, at 7.) Plaintiff additionally argues that the Mahboob and Onsgard opinions indicate that Bassler is uncomfortable in a work environment. (*Id.* at 7–8.) Finally, plaintiff alleges that the ALJ failed to address the consistency of the opinions of Dr. Mahboob and Ms. Onsgard. (*Id.* at 8.)

In assessing medical opinion evidence, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight," to any medical opinions, including those from the claimant's medical sources. 20 C.F.R. § 416.920c(a). Rather, an ALJ is to consider the following factors when determining the proper weight to apply to the opinion or prior administrative finding: (1) supportability; (2) consistency; (3) the relationship

4

with the claimant, including the length, purpose, and extent of the treatment relationship, the frequency of examinations, and the examining relationship; (4) specialization; and (5) other factors brought to the attention of the Commissioner. § 416.920c(c). The ALJ must consider all these factors, but he need explain only how he considered supportability and consistency. § 416.920c(b). This court will affirm the ALJ's assignment of weight to various medical opinions if it is supported by substantial evidence. *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021). This court cannot reweigh the evidence or substitute its judgment for the ALJ's. *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013).

### A. Evidence outside the relevant period

Plaintiff initially criticized the ALJ for relying on evidence "outside the relevant period." (Dkt. #13 at 7, 14–15.) Defendant responds that plaintiff neither defines the relevant period, nor what specific evidence was improperly considered. (Dkt. #15, at 14.) Regardless, plaintiff essentially abandons this criticism in her reply.

Evidence to which plaintiff *might* be pointing, because it preceded Dr. Mahboob's and Ms. Onsgard's evaluations, includes: (1) progress notes from Ellen Takher in a range cited by the ALJ from November 27, 2018, to August 13, 2019; (Tr. 2501–09); and (2) the psychological report of Dr. Steve Krawiec from July 21, 2016, (*Id.* 890–93). By contrast, plaintiff relies on evidence from Dr. Mahboob, whose treatment began by October 30, 2019 (*id.* 3395–403), and from Ms. Onsgard, whose treatment began by November 1, 2019 (i*d.* 3405–08). However, the ALJ considered and commented on a variety of medical findings, predating Mahboob's and Onsgard's opinions by a few years (Krawiec) or just a few months (Takher), and plaintiff cites no legal authority or regulation

5

prohibiting a thorough review of medical history. Indeed, plaintiff contradicts her own argument by criticizing the ALJ for *not* accepting Krawiec's 2016 finding of some limitations in both persistence and pace. (*See* dkt. #13, at 16.)

### B. Comfort in work environment

Plaintiff also argues that the ALJ erred in not adopting limitations suggested by Dr. Mahboob and Ms. Onsgard as to her abilities in a competitive work situation. Specifically, plaintiff points to Dr. Mahboob's opinion that Bassler was "Seriously limited" or "Unable to meet competitive standards" for all the work listed in the mental medical opinion form completed on November 17, 2020. (Dkt. #13, at 17 (citing Tr. 4178).) Plaintiff further points to Ms. Onsgard's finding on January 6, 2021, that while Bassler is "functional in her home environment," "her mood declines and her anxiety makes it difficult to function." (*Id.*, at 18 (citing Tr. 4438).)

However, while the ALJ noted and considered the findings and opinions of Dr. Mahboob and Ms. Onsgard regarding plaintiff's "work-related limitations," he also found both were contradicted by those same providers' treatment notes. (Tr. 45.) *See Leisgang v. Kijakazi*, No. 21-cv-40-bbc, 2022 WL 970151, at *7 (W.D. Wis. Mar. 31, 2022) (ALJ did not err by finding treatments notes were inconsistent with mental health work capacity questionnaire), *aff'd*, 72 F.4th 216, 221 (7th Cir. 2023). Thus, to the extent that Dr. Mahboob's and Ms. Onsgard's opinions on forms pertaining to plaintiff's performance in a competitive work environment suggested greater limitations, the ALJ was permitted to consider whether those opinions were supported by their examination findings. (Dkt. #15, at 14.)

6

Plaintiff objects to the ALJ's reasoning by citing the inapposite cases of *Spiva* and *Punzio* to suggest the ALJ did not properly consider Bassler's ability to sustain full-time work. (Dkt. #13, at 18.) In *Spiva*, the ALJ considered none of the medical professionals' evidence. *Spiva v. Astrue*, 628 F.3d 346, 351–52 (7th Cir. 2010). In *Punzio*, the ALJ cited no evidence for the conclusion that the claimant did not have any significant difficulty in managing activities of daily living. *Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011). By contrast, the ALJ here not only referred to evidence that contradicted Dr. Mahboob and Ms. Onsgard's opinions, but this evidence came from treatment records by Mahboob and Onsgard themselves. (Tr. 45.)

Plaintiff further argues that by relying heavily on medical notes from her telehealth appointments where she was likely to perform (Tr. 45), the ALJ "failed to address the key consideration of the clinical setting versus being in public." (Dkt. #18, at 5–6, 9, 14.) However, many of those appointments were with Ellen Takher, as well as Dr. Mahboob and Ms. Onsgard. Yet plaintiff embraces many of Mahboob's and Onsgard's telehealth findings, while distancing herself from much of Takher's telehealth findings, no doubt because the latter's are unhelpful to her cause. (Tr. 2501–09.) As the ALJ found, plaintiff's attempt to show that Bassler can only perform well outside a public or work setting is further undermined by Dr. Krawiec's observations, who found no difficulties with attention, concentration, or memory while Bassler was incarcerated. (*Id.* 42-43, 890–94.) Thus, plaintiff's argument that Bassler is only stable in a private home setting is undermined by the evidence in this case and is thus unsuccessful in being a basis to reverse the ALJ.

### C. Consistency of Mahboob and Onsgard opinions

Finally, plaintiff argues that the ALJ failed to consider that Dr. Mahboob's and Ms. Onsgard's opinions are not only consistent with each other, but in her view consistent with the opinions of Drs. Krawiec, Pape, and Kocina. (Dkt. #13, at 20–22; dkt. #18, at 15.) The applicable section of the Code of Federal Regulations provides that the more consistent a medical opinion is "with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive" it will be. 20 C.F.R. § 416.920c(c)(2).

This court's review of the record does not find the ALJ neglected to address consistent aspects of the expert's opinions. In particular, the ALJ noted the overlap in Mahboob and Onsgard's opinions. (Tr. 45.) However, the ALJ also noted the inconsistencies in these two opinions, as well as those of the other experts. For example, it is not consistent that Ms. Onsgard opined the only work-related activity for which Bassler is at or below "seriously limited" is completing a normal workday and workweek without interruption, (Tr. 4440), but Dr. Mahboob classified every work-related activity as either "seriously limited" or "unable to meet competitive standards," (*id.* 4178).

Plaintiff also argues that Bassler has PTSD that the ALJ did not fully consider. (Dkt. #18, at 7–8.) But her evidence for this diagnosis is simply three pages of Dr. Mahboob's opinion. (*Id.* at 9 (citing Tr. 4176, 4177, 4180).) While Dr. Mahboob *did* opine that Bassler had PTSD, the ALJ found that aspect of Mahboob's opinion unpersuasive based on Dr. Mahboob's own treatment records. (Tr. 44–45.) Additionally, Onsgard noted Bassler's "positive" response to psychotherapy. (Dkt. #15, at 7.) Similarly, plaintiff criticizes the ALJ for failing to note that Dr. Krawiec found Bassler had some

limitations in both persistence and pace. (Dkt. #13, at 16.) But as defendant suggests (dkt. #15 at 18–19), Dr. Krawiec's opinion appears to be "based primarily" upon Bassler's own, subjective complaints, and thus, the ALJ was permitted to "discount that opinion," *Prill v. Kijakazi*, 23 F.4th 738, 751 (7th Cir. 2022), as he obviously did. Moreover, contrary to plaintiff's argument, the ALJ *did* acknowledge Krawiec's opinions about Bassler's limitations. (Tr. 45 (noting that Bassler's "impairments could interfere with persistence and pace," as well as Dr. Krawiec's finding that" workplace changes and stresses would be inadvisable").) But the ALJ weighed that conclusion from Krawiec against his other conclusions (*e.g.*, Krawiec found Bassler had no difficulties with attention, concentration, or memory, (*id.* 43; *id.* 890–94)). The ALJ went on to find that aspects of Krawiec's opinion as to Bassler's limitations were unsupported, inconsistent, and ultimately, unpersuasive, specifically finding that Krawiec's conclusions were "vague about what the claimant could still do in a work environment." (*Id.* 45).

Thus, the court tends to agree with defendant that Bassler "merely disagrees with the conclusions the ALJ drew and asks the Court to reevaluate the evidence in a more favorable manner." (Dkt. #15, at 16.) Since the ALJ properly summarized the record, including both the experts' overlapping and divergent opinions, then exercised his discretion in weighing this evidence, the court cannot second guess it. 20 C.F.R. § 416.920c(a)–(c); *see also Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012) ("We do not reweigh the evidence or substitute our own judgment for that of the ALJ; if reasonable minds can differ over whether the applicant is disabled, we must uphold the decision under review.").

9

Alternatively, plaintiff suggests that the ALJ is "playing doctor" by weighing Dr. Mahboob's treatment records of "good mood" and "good judgment" over her ultimately diagnoses of severe impairments. (Dkt. #18, at 10–11.) However, if supported by other, expert medical opinions and record evidence,e this is part of the ALJ's charge. Indeed, plaintiff's cited authority actually confirms this. Specifically, in *Green v. Apfel*, 204 F.3d 780 (7th Cir. 2000), *no* medical expert testified, and the ALJ himself purported to weigh clinical records against the claimant's "complaints of debilitating pain and limitations." *Id.* 781-82. In contrast, here, the ALJ compared Dr. Mahboob's PTSD diagnosis with her treatment records to determine disability, and ultimately found, as did the agency medical experts, that the diagnosis was insufficiently supported.

For these reasons, the court finds that the ALJ properly evaluated the opinions of Dr. Mahboob and Ms. Onsgard and reached a conclusion supported by the evidence.

## II.   Formulation of Plaintiff's Residual Functional Capacity

Next, plaintiff argues that the ALJ's RFC formulation was flawed. Specifically, plaintiff asserts that both Drs. Kocina and Pape noted Bassler's CPP limitations, which the ALJ erroneously excluded from her RFC. (Dkt. #13, at 23–24.) Instead, plaintiff argues that the findings of Drs. Page and Kocina should have been "joined with all other limitations" by adopting a "moderate limitation in [Bassler's] ability to complete a normal workday and workweek." ((Dkt. #18, at 16, 18.) Defendant responds that since neither Drs. Pape nor Kocina opined that Bassler experienced "disabling" mental limitations, no such limitation was necessary. (Dkt. #15, at 19.)

10

The mere fact that Bassler has some limitations does not mean she is entirely disabled. Here, while the ALJ noted Dr. Pape's and Dr. Kocina's findings that Bassler had moderate limitations in attendance and completing a normal workday (Tr. 169, 209–10), the ALJ expressly took those findings into account by limiting her to "understanding, remembering, and carrying out simple instructions," performing "simple, routine tasks with only occasional changes," maintaining concentration "in two-hour increments," and only having "occasional interaction" with others. (*Id.* 41.) Thus, contrary to plaintiff's assertion, the ALJ *did* include a limitation in the RFC to account for Bassler's challenges in completing a normal workweek. Thus, the ALJ's limitations appear to have properly accounted for moderate limitations in CPP, while also adequately accounting for Bassler's demonstrated psychological symptoms in the record. *Urbanek v. Saul*, 796 F. App'x 910, 914 (7th Cir. 2019).

Citing as support the Seventh Circuit's opinion in *Winsted v. Berryhill,* 923 F.3d 472 (7th Cir. 2019), plaintiff nevertheless argues that the RFC inadequately considered the opinions of Drs. Pape and Kocina. (Dkt. #18, at 18.) In *Winsted*, the court held an ALJ's hypothetical question to the vocational expert had failed to capture adequately the claimants' concentration-functioning deficit. 923 F.3d at 476-79. In contrast, however, the ALJ here adopted an RFC that limits Bassler's CPP for simple tasks to just two-hour increments. (Tr. 41.) Furthermore, the ALJ's hypothetical question asked the vocational expert whether jobs exist with that limitation, to which the vocational expert opined that such jobs exist in substantial numbers, including as a marker, router, or fastener. (*Id.* 47.)

As noted, the ALJ further found that the opinions of Drs. Pape and Kocina were mostly consistent with the treatment records showing Bassler *could* perform simple routine tasks and follow simple instructions. In particular, Dr. Kocina concluded Bassler had the ability to concentrate and persist for 2 hours at a time with normal work breaks (*id.* 210), and she could perform "at least" unskilled, routine work (*id.* 212). The ALJ also stated his reasons for finding Drs. Pape's and Kocina's suggestion for greater limitations completely unpersuasive (*id.* at 46), which again fell within his appropriate exercise of discretion.

Finally, plaintiff criticizes the ALJ for giving specific evidentiary "weight" to aspects of Drs. Pape's and Kocina's opinions. (Dkt. #13, at 24.) *See generally* 20 C.F.R. § 416.920c(a) (prohibiting deferring to or giving any "specific evidentiary weight, including controlling weight, to any medical opinion"). In particular, plaintiff argues that the ALJ applied Drs. Pape's and Kocina's "narrative" findings, but *not* their findings in "Section I" of their disability determination explanations. (Dkt #13, at 20–21, 24.) This argument, too, is misguided. As defendant points out, it strains logic to believe the ALJ gave undue deferential "weight" to Drs. Pape's and Kocina's opinions where, in fact, he disagreed with various aspects of their assessments. (Dkt. #15, at 20.) The ALJ even acknowledged the constraint placed upon him under the regulations to give no specific evidentiary weight to medical findings. (Tr. 44.) Regardless, Section I on the form is "merely a worksheet" intended to be used to document the RFC decision, but "does not constitute the RFC assessment" itself. POMS DI 24510.060. Moreover, "adjudicators can and should rely on the Section III, rather than Section I, findings." *Baumann v. Saul*, No. 20-cv-11-wmc, 2020

12

WL 7237921, at *5 (W.D. Wis. Dec. 9, 2020). Thus, plaintiff's allegations on this point fail to demonstrate an error by the ALJ as well.

For these reasons, this court concludes the ALJ properly considered Drs. Kocina's and Pape's opinions on Bassler's CPP limitations in formulating Bassler's RFC.

ORDER

IT IS ORDERED that the decision of defendant Kilolo Kijakazi, Acting Commissioner of Social Security, is AFFIRMED, and plaintiff Greta Bassler's appeal is DISMISSED. The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 29th day of January, 2024.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge